**E-FILED**
Wednesday, 05 September, 2007  02:49:57 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION**

| | |
|---|---|
| CAROL HOLDING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-CV-1104 |
| | ) |
| CRAIG COOK, | ) |
| ING USA ANNUITY & LIFE INS. CO., | ) |
| FIDELITY & GUARANTY LIFE INS. CO., | ) |
| | ) |
| Defendants. | ) |

## <u>REPORT AND RECOMMENDATION</u>

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendants' partial motions to dismiss Plaintiff's Complaint (d/e 8, 12), both brought under Fed. R. Civ. P. 12(b)(6).  For the reasons below, the Court recommends that Plaintiff's RICO claim be dismissed but not Plaintiff's federal securities claim.

### Standard

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).

Factual allegations in the complaint as accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., — F.3d —, 2007 WL *2 2215764 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However, fair notice means setting forth enough factual allegations to "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'  . . ." Id., *quoting* Bell, 127 S.Ct. At 1965, 1973 n. 14.

With regard to the RICO claim, Fed. R. Civ. P. 9(b) requires fraud to be pled "with particularity."  Defendants do not argue that the RICO claim fails this standard.  They instead focus on whether a "pattern of racketeering activity" is sufficiently alleged.  Similarly, with regard to the federal securities claim, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b), imposes heightened pleading requirements. However, Fidelity does not move to dismiss the securities claim on the grounds that the allegations fail to meet the PSLRA's heightened pleading standards.  Accordingly, the Court does not address whether Plaintiff has met these heightened pleading requirements.

If, on a 12(b)(6) motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); Berthold Types Ltd. v. Adobe Sys. Inc., 242 F.3d 772, 775-76 (7th Cir. 2001)(in dismissing under 12(b)(6), the district court should not have considered contract that was not attached to the complaint, even though breach of contract was alleged).  However, documents submitted with a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his [or her] claim."  Wright v. Assoc. Securities Co., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994)(other citation omitted).

## Allegations

The allegations are taken from Plaintiff's Amended Complaint (d/e 5) and set forth as true for purposes of this recommendation.

Plaintiff owned an individual retirement account ("IRA") with American Express Financial Advisors, Inc., where Defendant Cook was employed at the time.  In March, 2005, Defendant Cook left the employ of American

Express and became associated with Defendants ING USA Annuity & Life Insurance Company ("ING") and Fidelity & Guaranty Life Insurance Company ("Fidelity").[1]

Defendants offered to transfer Plaintiff's American Express retirement account into new retirement accounts established by Defendants. Defendants represented that they would effect the transfer as a tax-free IRA rollover.  Plaintiff agreed and gave Defendants the necessary information and authorization to effect the transfer.

In April, 2005, Plaintiff gave several signed, blank personal checks to Defendants.  Defendants directed American Express to redeem and distribute more than $500,000 from Plaintiff's IRA over a period of months. Six redemptions total were made, each for $100,000 or less, from April through July 2005.[2]  American Express sent Plaintiff the redemption checks, which Plaintiff deposited into her personal checking account at Defendants' direction.  Defendants then transferred the funds from Plaintiff's checking account into the new retirement accounts, by

---

[1]The nature of that association is not clear.  Fidelity states in its Answer that it appointed Cook to sell its products.  (d/e 11, para. 9).

[2]$100,000 on April 18; $100,000 on April 20; $100,000 on April 22; $20,000 on April 24; $100,000 on July 26; and $80,496.64 on July 29.  Defendants Cook and ING state in their Answer that American Express prohibited redemptions in excess of $100,000 per day.  (d/e 10, p. 10, para. 1; d/e 11).

completing the signed, blank checks Plaintiff had provided to Defendants.

These transfers to the new accounts occurred five times on various dates

in April, May and August, 2005.  Defendants represented each transfer as

a tax-free IRA rollover and Plaintiff relied on these representations.

Defendants' representations were false.  The Internal Revenue Code

allows only one tax-free rollover in a twelve month period.  26 U.S.C.

Section 408(d)(3)(B).[3]  Thus, only the first transfer was tax-free.  The other

transfers were subject to certain taxes, which Plaintiff had to disclose and

pay.

In March, 2007, Plaintiff filed suit in Woodford County Circuit Court

pursuing state law claims for breach of contract, common law fraud and

consumer fraud.  Defendants removed the action to federal district court

based on diversity jurisdiction.  Plaintiff then filed an amended complaint

adding two federal claims: a securities fraud claim under section 10(b) of

the 1934 Securities Act (Count IV), and a RICO claim under 18 U.S.C.

Section 1962(c)(Count V).

---

[3]The Court is not determining whether Plaintiff's read of this section is correct or
whether there are exceptions to that rule.

## Analysis

Defendants ING and Cook move to dismiss only Count V, the RICO claim.  (d/e 9).  Defendant Fidelity moves to dismiss both the RICO claim and Count IV, the federal securities claim.  (d/e 13).

### I.  Securities Claim (Count IV)

Plaintiff alleges that the IRA accounts she purchased from Defendants were "securities" within the meaning of § 3(10) of the Securities and Exchange Act of 1934 ("1934 Securities Act"), 15 U.S.C. Section 78c(10).  (d/e 5, para. 43).  She alleges that Defendants' fraudulent assurances about the tax-free status of the transfers violated Section 10(b) and Rule 10b-5 of the 1934 Securities Act.  15 U.S.C. Section 78j(b); 17 C.F.R. § 240.10b-5.

Fidelity argues that the accounts Plaintiff purchased are not "securities" but rather "annuity contracts" within the meaning of Section 3(a)(8) of the 1933 Securities Act, 15 U.S.C. § 77c(a)(8), making them exempt from federal securities laws.  To support that conclusion, Fidelity asserts that the accounts meet the safe harbor provisions of Rule 151, 17 C.F.R. § 230.151, which defines a certain subset of annuities as exempt under § 3(8)(a).

In support of its arguments, Fidelity attaches the written documents that purportedly govern Plaintiff's purchases. [4]  Fidelity asserts the documents can be considered because they are referred to in the Complaint and are central to Plaintiff's claim.  (d/e 13 p. 3).  Plaintiff objects to consideration of the documents as matters outside the pleadings and asks that, if they are considered by the court, that the motion be treated as one for summary judgment, with "an opportunity to conduct discovery and present all material . . . pertinent."  (d/e 14, p.4).

The Court agrees with Plaintiff that the contracts are matters outside the pleadings and therefore are not properly considered on a motion to dismiss unless the motion is treated as a motion for summary judgment. Fed. R. Civ. P. 12(b) and (c).   Plaintiff does not reference the contracts in her Complaint nor do they appear central to Plaintiff's securities fraud claim from the four corners of the Complaint.  The contracts are undoubtedly central to the *merit* of Plaintiff's claim, but that does not make their consideration proper in deciding a Rule 12(b)(6) motion to dismiss. Berthold, 242 F.3d at 775-76; cf. Wright, 29 F.3d at 1248 (agreement

---

[4]It is not clear if the documents attached to the motion to dismiss constitute the entire relevant written agreement.  Those documents state that the entire contract also includes the group contract and the contract holder's application, which do not appear to be attached.  (d/e 13, Ex. A, p. 5; Ex. B, p. 5).

properly considered where Complaint "repeatedly quote[d] from and refer[red] to the [a]greement."). On that basis alone, denial of the motion to dismiss is warranted.

In any event, even if the contracts were properly considered on a 12(b)(6) motion to dismiss, Fidelity does not explain how those documents resolve beyond doubt the annuity/security question. "Security" is defined broadly and similarly in both the 1933 and 1934 Securities Acts, in a comprehensive list that includes "investment contracts." 15 U.S.C. §§ 77(b)(a)(1), 78c(a)(10); Reves v. Ernst & Young, 494 U.S. 56, 61 and n. 1 (1990)(definition of "security" in both 1933 and 1934 Security Acts has been treated as "essentially identical" and " encompass[ing] virtually any instrument that might be sold as an investment.").

Section 3(a)(8) of the 1933 Act does exempt an "insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the [State] insurance commissioner, . . . ." 15 U.S.C. § 77c(a)(8)(1933 Securities Act).[5]

_____

[5]Plaintiff seems to contend that Section 3(8)(a) excludes annuity contracts only from registration, not from the anti-fraud provisions of the 1934 Act, but that position has been rejected. *See* Securities Act Release No. 6558 (Nov. 21, 1984), 49 Fed. Reg 46750, 46753 (Nov. 28, 1984)("In the Commission's view, there can be no serious question that Congress intended any insurance contract (including any annuity contract or optional annuity contract) falling within section 3(a)(8) of the Act to be excluded from all provisions of the Act, notwithstanding the plain language of the Act that section

However, calling something an annuity does not necessarily make it one. Courts must look behind the "label" to the substance of the agreement to determine whether a particular financial product is an "annuity contract" exempt from the federal securities laws.  *See* <u>Assoc. In Adolescent Psychiatry</u>, 941 F.2d 561, 566 (7th Cir. 1991)("§ 3(a)(8) . . . necessarily exempts annuities that leave purchasers with some investment risk.  If on the other hand a seller just pins the label "annuity" on a mutual fund, in which the buyer bears all of the risk, § 3(8)(a) is inapplicable").

Due to the many different varieties of "index" annuities, determining whether Fidelity's products are "annuities" or "securities" for purposes of the federal securities laws is complicated and resists generalization.  *See SEC website, Investor Information*, <u>http://www.sec.gov/investor/pubs/ equityidxannuity.htm</u> (last visited August 28, 2007)("Equity-indexed

---

3(a)(8) is an 'exemption' from the registration but not the antifraud provisions. Similarly, in the Commission's view, a contract which satisfies rule 151 would be excluded from all provisions of the Act."); <u>Otto</u>, 814 F.2d 1127 (opinion before rehearing)(finding that annuity fell within Section 3(a)(8) exemption under 1933 Securities Act, and therefore summary judgment was proper to defendants on 1934 Securities Act claim).  <u>Daniel v. International Broth. Of Teamsters</u>, 561 F.2d 1223 (7th Cir. 1977), *rev'd on other grounds*, 431 U.S. 551, does not hold otherwise.  In <u>Daniel</u>, the Seventh Circuit held that a union member's interest in a pension plan was a "security," even though the pension plan did not need to be registered as a security. 561 F.2d at 1223.   Plaintiff is correct, however, that the fact that Fidelity's products are not registered is not dispositive of whether Fidelity's financial product is an annuity.

Page 9 of  21

annuities combine features of traditional insurance products (guaranteed

minimum return) and traditional securities (return linked to equity markets).[6]

Depending on the mix of features, an equity- indexed annuity may or may

not be a security. The typical equity-indexed annuity is not registered with

the SEC."); *NASD Notice to Members 05-50, Member Responsibilities for*

*Supervising Sales of Unregistered Equity-Indexed Annuities* (Aug.

2005)("The question of whether a particular EIA is an insurance product or

a security is complicated and depends upon the particular facts and

circumstances concerning the instrument offered or sold.") (available at

http://www.finra.org/index.htm, search for 05-50)(last visited August 28,

2007).

 Fidelity argues that the annuities here are like those in Otto v.

Variable Annuity Life Ins. Co. , 814 F.2d 1127, 1141-42 (7th Cir. 1986) and

therefore are not securities.  The Seventh Circuit initially held in Otto that a

---

[6]*See also* the website for the Financial Industry Regulatory Authority (formerly
NASD), Investor Alert on Equity-Indexed Annuities ("Although one insurance includes
the word "simple" in the name of their product, EIAs are anything but easy to
understand.  One of the most confusing features of an EIA is the method used to
calculate the gain in the index to which the annuity is linked.  To make matters worse,
there is not one, but several different indexing methods.  Because of the variety and
complexity of the methods used to credit interest, investors will find it difficult to
compare one EIA to another."
http://www.finra.org/InvestorInformation/InvestorAlerts/AnnuitiesandInsurance/Equity-In
dexedAnnuities-AComplexChoice/index.htm (last visited August 28, 2007).

fixed annuity which guaranteed principal and 4% interest for the first ten years, followed by 3 ½ % thereafter, plus "excess interest" declared annually, was exempt from the securities laws.  However, the Seventh Circuit later modified the decision after the insurer disclosed, contrary to prior representations, that it had retained unfettered discretion to change the excess interest rate paid on past contributions.  814 F.2d at 1140-1142. Despite the insurer's label on the product as a "fixed annuity," the Seventh Circuit held in its opinion on rehearing that this discretion left the "investor with an investment risk significant enough to throw . . . [the annuity's] status into doubt. . . . ."  The final holding in <u>Otto</u>:  the insurer's "fixed annuity plan is a security subject to the federal securities laws."  814 F.2d at 1141.

Remarkably, Fidelity does <u>not</u> discuss the opinion on rehearing in <u>Otto</u>.  Ignoring that, Fidelity does not identify the provision in its contracts that place the investment risk on Fidelity as opposed to Plaintiff.  For example, Fidelity has not identified the provision that guarantees Plaintiff her principal plus a particular rate of return.  Fidelity points only to the "cap rate," but that is defined in the contracts as the "maximum percentage rate that may be credited to an option's account . . ." determined each year by

Fidelity and "fixed in advance."  (d/e 13, Ex. A, p. 7; Ex. B, p. 7).  The cap

rate thus only establishes the maximum interest Plaintiff *might* be credited

for the year, depending on how the index performs.[7]  Fidelity also does not

explain how the index gain is calculated, which may be important to

understanding allocation of investment risk.[8]

Similarly, Fidelity does not point to the contract provision which

qualify the annuities for safe harbor under Rule 151.  Rule 151 provides:

> (a) Any annuity contract . . . shall be deemed to be within the
> provisions of section 3(a)(8) . . . of the Securities Act of 1933 . .
> Provided, That . . .
>
> > (1) The . . . contract is  issued by a corporation (the
> > insurer) subject to the supervision of the [State]
> > insurance commissioner;

---

[7]Thus, if the S&P 500 index rose 10% (calculated pursuant to the contract), and the cap rate was 5%, the interest credited to Plaintiff's account would be only 5%.  If the S&P rose 0% or declined, Plaintiff would be credited no interest for that year. There do appear to be provisions guaranteeing an interest rate for surrender value, and a table attached shows guaranteed payments for 10 years based on a specified interest rate, but Fidelity does not mention these provisions, much less discuss how they factor into the security/annuity analysis.  (d/e 13, Exs. A & B, p. 6 and attached Guaranteed monthly payment schedule).

[8]The contracts use a "point to point" calculation: the index value on the current certificate anniversary is compared to the index value on the prior certificate anniversary.  (d/e 13, Ex. A, p. 7; Ex. B, p.7).  *See* www.finra.org/InvestorInformation/ InvestorAlerts/AnnuitiesandInsurance/Equity-IndexedAnnuities-AComplexChoice/index. htm. p. 4 (last visited August 28, 2007)(disadvantage of point-to-point calculation is that it "relies on single point in time to calculate interest. . . even if the index . . . is going up throughout . . ., if it declines dramatically on the last day of the term, then part or all of the earlier gain can be lost.").

(2) The insurer assumes the investment risk under the contract as prescribed in paragraph (b) of this section; and

(3) The contract is not marketed primarily as an investment.

An insurer "assumes the investment risk" if:

(1) The value of the contract does not vary according to the investment experience of a separate account;

(2) The insurer for the life of the contract

(i) Guarantees the principal amount . . . and interest credited thereto, less any deduction . . . [for certain expenses and charges]; and

(ii) Credits a specified rate of interest . . . to net purchase payments and interest credited thereto; and

(3) The insurer guarantees that the rate of any interest to be credited in excess of that described . . . [above] will not be modified more frequently than once per year.

Fidelity does not point to any specific provision that meets these requirements or any of the other requirements in the rule.  For example, Fidelity does not explain where the contracts "credit a rate of interest in excess of that specified in the Illinois nonforfeiture law or the NAIC

Standard Nonforfeiture Law."  17 C.F.R. § 230.151(b) and (c).[9]  In short,

Fidelity attaches the contracts but does not explain the contracts' terms or

how those terms shift investment risk to Fidelity or satisfy Rule 151.

The Court does not believe it would be expedient to treat Fidelity's

motion as one for summary judgment, because the contracts alone are not

necessarily dispositive, even with a thorough briefing of their terms.  Plaintiff

correctly points out how Fidelity marketed the products is also a factor

under Rule 151, which requires that the products not be marketed primarily

as investments.  The first Otto decision upon which Fidelity relies was

based not only on the written contract terms, but also on how the product

was marketed-- "*primarily* on the basis of its stability and security."  814

F.2d at 1134 (emphasis in original); *see also* Christopher S. Petito, *Variable*

*Annuities & Variable Life Insurance Regulation* (June 2006), Practising Law

Institutute (Westlaw cite: "Variable Annuities & Variable Life Ins. Reg.

s 2:2.3" at *2-35)("marketing may prove to be a critical element of section

_____

[9]*See also* Christopher S. Petito, *Variable Annuities & Variable Life Insurance Regulation*, Practising Law Institute (June 2006)(Westlaw cite: "Variable Annuities & Variable Life Ins. Reg. s 2:2.3")(even though insurer arguably bears significant investment risks in an equity index contract, "retrospective calculation of rates means that equity index annuities may not technically be able to satisfy the investment risk requirements of Rule 151, which anticipate forward-looking declarations of accumulation rates").

3(a)(8) analysis").  The Court therefore believes that determining whether

Plaintiff purchased "annuity contracts" within the meaning of §3(8)(a) is

better left to a developed factual record after adequate time for discovery.[10]

*See, e.g.,* Assoc. In Adolescent Psychiatry, 941 F.2d at 561 (decided on

summary judgment); Otto, 814 F.2d 1127 (decided on summary judgment).

## II.  Rico Claim (Count V)

Plaintiff alleges in her Amended Complaint that "Defendants have

knowingly conducted or participated, directly or indirectly, in the conduct of

plaintiff's affairs and plaintiff's individual retirement account through a

pattern of racketeering activity in violation of 18 U.S.C. Section 1962(c)."

(d/e 5, para. 49).  The predicate acts that constitute the alleged pattern

"include repeated violations of . . . [mail and wire fraud], including the acts

alleged in paragraphs 16 through 38 which were undertaken by defendants

with the intent and as a scheme to defraud plaintiff."  (d/e 5, para. 50).

---

[10]The court found one published case in its own non-exhaustive research which
granted a motion to dismiss regarding an indexed annuity.   Malone v. Addison Ins.
Marketing, Inc., 225 F.Supp.2d 743 (W.D. Ky 2002).  In Malone, however, the parties
did not identify any "disputed material fact which might prevent the Court from resolving
. . ." the question.

Paragraph 16 through 38 of the Complaint detail the IRA rollover "scheme" set forth in the allegations section above.

"In order to state a viable cause of action under Section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 598 (7th Cir. 2001)(citation omitted); *see also* Fed. R. Civ. P. 9(b)(averments of fraud must be stated with particularity). Defendants argue that Plaintiff has not alleged a "pattern of racketeering activity" or identified a RICO "enterprise."

A fraudulent scheme does not give rise to a RICO claim simply because its achievement required multiple fraudulent representations and transactions over time:

> Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts (here, the mailings) may be no indication of the requisite continuity of the underlying fraudulent activity.

Elliott v. Chicago Motor Club Ins., 809 F.2d 347, 350 (7th Cir. 1987)(several acts of mail fraud over period of years did not state RICO claim where all the acts were related to settling one insurance claim arising from one

accident), *quoting* Lipin Enterprises, Inc. v. Lee, 803 F.2d 322, 323 (7th Cir. 1986)(12 separate acts of mail fraud did not make RICO pattern, where acts related to one sale to one person).   "[A] single fraudulent scheme with only one injury to one victim . . .[is] not a 'pattern of racketeering activity' under Section 1962(c) simply because it required several acts of mail and wire fraud to inflict the single injury."  Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 598 (7th Cir. 2001)((discussing Lipin's holding).

The Seventh Circuit has held repeatedly held that multiple instances of mail and wire fraud do not make out a RICO claim if those acts were in pursuit of a single and discrete underlying fraudulent scheme.  *See, in addition to cases above,* Brandt v. Schal Assoc., Inc., 854 F.2d 948, 953 (7th Cir. 1988)(multiple acts (concealment, coercion, false back charges, threats) in furtherance of single fraud (to induce plaintiff to perform extra, unpaid work) was not pattern); Skycom Corp. v. Telstar Corp., 813 F.2d 810, 818 (7th Cir. 1987)("supposedly fraudulent representations leading up to a single contract and the transfer of a single business opportunity" did not allege RICO pattern); Tellis v. United States Fidelity & Guar. Co., 826 F.2d 477, 478 (7th Cir. 1986)("multiple acts of mail fraud in furtherance of a single

episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern")(fraudulent mailings over two month period in effort to induce plaintiff to settle worker's compensation claim did not state RICO pattern).

Plaintiff does not distinguish this controlling precedent from her case, nor can the Court see an arguable distinction.  Here, like the cases above, there was one fraudulent scheme--to induce Plaintiff into believing that the rollover of her IRA was tax free, so that she would transfer her retirement funds to Defendants.  The same fraudulent representation (that the transfers were tax-free) was repeated with each predicate act.  There was one victim, Plaintiff, and one injury, the taxes she owed on those transfers. That the fraudulent scheme took several months to perpetrate does not amount to a pattern of racketeering activity under the cases discussed above.

Plaintiff does argue that she was not the only intended victim of the scheme.  She asserts that "the end result of defendants' scheme . . . was for plaintiff to file false income tax returns underreporting the true income and excise taxes owed by plaintiff", thus defrauding the U.S. Treasury.  (d/e 14, p. 16).  She contends that, based on Defendants' affirmative defenses

set forth in their Answers, "Defendants seemingly continue to urge that plaintiff should have filed false and fraudulent income tax returns. Thus, plaintiff may be able to prove defendants are continuing their pattern of racketeering activity." (d/e 14, p. 17).[11] She cites no case in support of these arguments.

Defendants' alleged attempt to induce Plaintiff to file a false tax return does not allow an inference of a pattern of racketeering activity. That action relates to the same fraudulent scheme–to obtain the transfer of Plaintiff's IRA accounts on the false promise that the transfers were tax-free. *See* Brandt, 854 F.2d at 953 (multiple acts of fraudulent concealment and later acts in cover-up was not a pattern of racketeering). That the U.S. Treasury's purse might have been affected by the scheme does not transform Defendants actions into a RICO pattern, nor does the fact that Defendants continue to press their purportedly fraudulent tax position in this litigation.

---

[11]Fidelity asserts in its Answer that Plaintiff failed to mitigate her damages by withdrawing a request for a private letter ruling on the transactions before the ruling issued. (d/e 11, p. 13). Similarly, ING and Cook assert that Plaintiff could have sought to treat all the transactions as one, either by following through with her private letter ruling request or by filing a disclosure form with her income tax return. (d/e 10, pp. 11-12). The Court does not decide the merits of the parties arguments over whether the taxes' were legitimately escapable.

The Court accordingly recommends dismissal of Plaintiff's RICO claim on the grounds that Plaintiff has not alleged a pattern of racketeering activity, an essential element of a RICO claim under 18 U.S.C. Section 1962(c).  In light of this recommendation, the Court need not address Defendants' other arguments for dismissal.  <u>Slaney</u>, 244 F.3d 598 n. 9 (district court under no obligation to discuss all RICO elements once court finds one element lacking).

WHEREFORE, the Court RECOMMENDS the motion to dismiss Plaintiff's RICO claim by Defendant ING and Cook (d/e 8) be granted in full. The Court FURTHER RECOMMENDS that the motion to dismiss by Defendant Fidelity (d/e 12) be granted in part, to the extent Fidelity seeks dismissal of the RICO claim.  The Court recommends that Fidelity's motion to dismiss otherwise be denied.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  See also Local Rule 72.2.

ENTER:    September 5, 2007

s/ Byron G. Cudmore

_____

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE